IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SONY ELECTRONICS INC., SONY
COMPUTER ENTERTAINMENT AMERICA
INC., SONY PICTURES ENTERTAINMENT
INC., SONY CONNECT INC., SONY
ONLINE ENTERTAINMENT INC., SONY
CORPORATION OF AMERICA, SONY BMG
MUSIC ENTERTAINMENT INC., AND
SONY ERICSSON MOBILE
COMMUNICATIONS (USA) INC.,

               Plaintiffs,

    v.

ORION IP, LLC,

          Defendant.

C.A. No. 05-255-GMS

**ORION IP, LLC'S OPENING BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS, STAY, OR TRANSFER
THIS ACTION TO THE EASTERN DISTRICT OF TEXAS**

MORRIS, NICHOLS, ARSHT & TUNNELL
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
Attorneys for Defendant Orion IP, LLC

June 27, 2005

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDING    1

SUMMARY OF ARGUMENT    4

STATEMENT OF FACTS    5

ARGUMENT    6

I.    THE COURT SHOULD DISMISS, STAY OR TRANSFER THIS ACTION UNDER THE FIRST-FILED RULE.    6

    A.    The First-Filed Rule Dictates That This Court Should Decline Jurisdiction Over This Action.    6

II.    IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF TEXAS.    8

    A.    This Action "Might Have Been Brought" In Texas.    8

    B.    A Balancing of The Relevant Factors Strongly Favors Transfer To the Eastern District of Texas.    9

CONCLUSION    12

<u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

<u>Cases</u>

*Bayer Bioscience N.V. v. Monsanto Co.*,
    2003 WL 1565864 (D. Del. Mar. 25, 2003)      7

*Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc.*,
    2001 WL 1414868 (D. Del. Nov. 13, 2001)      7, 9, 11

*Ellenby Techs., Inc. v. AT Sys. Inc.*,
    No. Civ. A. 01-416, 2002 WL 356686 (D. Del. Feb. 8,
    2002)      7

*Genetech, Inc. v. Eli Lilly and Co.*,
    998 F.2d 931 (Fed. Cir. 1993)      6

*Invitrogen Corp. v. Stratagene Holding Corp.*,
    Civil Action No. 00-620-JJF, (D. Del. Apr. 11, 2001)      10, 11

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995)      4, 9, 10, 11

*Smith v. McIver*, 22 U.S. (9 Wheat.) 532 (1824)      6

*Telephonics Corp. v. Lindly & Co.*,
    192 F.Supp. 407 (E.D.N.Y. 1961)      7

## NATURE AND STAGE OF THE PROCEEDING

This declaratory judgment action was filed by Sony Corporation of America ("Sony") as one part of a transparent two-part attempt to avoid an earlier-filed action by Orion IP, LLC ("Orion") involving the same patents.

The First-Filed Texas Action.

On November 23, 2004, Orion filed an action in the United States District Court for the Eastern District of Texas (the "Texas Action") against certain defendants, alleging infringement of U.S. Patent Nos. 5,367,627 (the '627 Patent) and 5,615,342 (the '342 Patent).[1]  On February 10, 2005, Orion filed an amended complaint in the Texas Action, which, among other things, added Sony as a defendant.  Capshaw ¶ 2.  On that same day, as a result of settlements with other defendants, Orion filed a notice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(i), dismissing all of the defendants in the Texas Action other than Sony, Advance Auto Parts, Inc. and Panasonic Corporation of North America.  Id.

On February 18, 2005, Sony sought and was granted an extension of time by Orion until April 8, 2005 to respond to the complaint in the Texas Action.  Capshaw ¶ 3.  Approximately six weeks later, on April 1, 2005, Sony contacted Orion and suggested that the parties engage in early settlement discussions.  Capshaw ¶ 4.  Shortly thereafter, on April 7, 2005, Sony filed its answer in the Texas Action and asserted affirmative defenses of non-infringement and invalidity of the '627 Patent and the '342 Patent.  Sony

---

[1]  See the June 27, 2005 Declaration of S. Calvin Capshaw, which is being filed with this motion, at paragraph 2.  The Declaration will hereinafter be cited as "Capshaw ¶ ___."

did not, however, assert any counterclaims for declaratory judgments on those or any other issues.  Capshaw ¶ 3.

On the following day, April 8, 2005, Orion agreed to Sony's request to proceed with settlement discussions subject to the conditions that the discussions would be covered by Federal Rule of Evidence 408, that the parties attending the meeting have authority to settle the case and that the parties negotiate in good faith.  Capshaw ¶ 5.  On April 12, 2005, Sony's counsel contacted Orion's counsel with proposed dates for the settlement meeting and stated that a Sony representative would be present at the meeting who would have settlement authority.  See, June 27, 2005 Declaration of Elizabeth L. Derieux at paragraph 2.  Although a meeting went forward in New York on April 28, 2005 as planned, Sony did not comply with the conditions for the meeting.  Capshaw ¶¶ 7-8.  Sony stated at the meeting that there could be no settlement negotiations at that time and that the meeting was, from Sony's perspective, purely informational.  Capshaw ¶ 8.

The Later-Filed Delaware Action.

On May 2, 2005, two business days after the "settlement" meeting, Sony and several of its affiliate entities brought this declaratory judgment action against Orion ("Delaware Action").  Capshaw ¶ 9.  The Delaware Action is based on the '627 Patent and the '342 Patent, which, of course, are the same two patents at issue in the Texas Action.  The complaint in the Delaware Action seeks declarations regarding non-infringement and invalidity of the '627 Patent and the '342 Patent.  It thus raises, in an affirmative claim form, the very same issues raised by Sony's affirmative defenses in the Texas Action.

The Motion To Dismiss The Texas Action.

        Three days after filing the Delaware Action, Sony moved to dismiss the Texas Action for failure to state a claim. In its motion to dismiss, Sony argued, in part, that the proper parties to the infringement action included its affiliate entities and that Orion should not be permitted leave to amend its pleadings in the Texas Action to add those entities because those affiliated entities, along with Sony, had already filed suit against Orion in the Delaware Action.

        In response to that Motion to Dismiss the Texas Action, Orion put Sony on notice of its intent to file a motion for sanctions against Sony pursuant to Rule 11(c). Sony then withdrew its motion to dismiss the Texas Action. By doing so, Sony effectively acknowledged that the dispute should proceed in the first-filed Texas Action. Unfortunately, however, Sony has not voluntarily dismissed or stayed the action pending before this Court, thereby forcing Orion to file this motion.

        This is Orion's opening brief in support of its motion to dismiss, transfer or stay this action in favor of its first-filed Texas Action.

## SUMMARY OF ARGUMENT

The Delaware Action was brought by Sony and its affiliate entities over six months after Orion's Texas Action was filed and it is effectively a mirror-image non-infringement declaratory judgment action. The first-filed rule adopted by both the Third Circuit and the Federal Circuit require this Court to dismiss, stay or transfer Sony's later-filed Delaware Action.

Alternatively, this Delaware Action should be transferred to Texas pursuant to 28 U.S.C. § 1404. The Third Circuit has outlined a series of private and public factors, the so-called *Jumara* factors, to be considered under Section 1404 when a party moves to transfer an action to another court. These transfer factors, as well as the first-filed rule, favor transferring this action to Texas where Orion's first-filed action is pending.

## STATEMENT OF FACTS

Sony is a New York corporation with its principal place of business in New York City (Complaint ¶ 6).  The other seven plaintiffs are all Sony controlled or related entities that are all incorporated or organized under Delaware law (Complaint ¶¶ 1-8 and 20).  However, none of those seven plaintiffs have their principal place of business in Delaware.  (Id.).  Rather, their principal places of business range from California (five entities) to New York (one entity) to North Carolina (one entity).  (Id.) In addition, there is no allegation in the complaint that any of the plaintiffs have any connection to Delaware other than the fact of being incorporated or organized under Delaware law.

Orion is also organized under Delaware law, but like the plaintiffs, it has no other connection to Delaware. See, June 27, 2005 Declaration of David Pridham at paragraph 2. Orion has offices in Texas where the first-filed Texas Action is pending. Capshaw ¶ 11 & Pridham ¶ 2.

## ARGUMENT

I.    THE COURT SHOULD DISMISS, STAY OR TRANSFER THIS ACTION UNDER THE FIRST-FILED RULE.

    A.    The First-Filed Rule Dictates That This Court Should Decline Jurisdiction Over This Action.

It has long been established that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 535 (1824). This "first-filed rule" was adopted by the Third Circuit more than sixty years ago. *See Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d. Cir. 1941). The rule is intended to promote sound judicial administration and comity among courts in the federal system:

> **The party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter**. The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice ....

*Crosley Corp*, 122 F.2d at 930 (emphasis added).

The Federal Circuit also mandates that the "first-filed" rule be followed in patent cases. As this Court has recognized, "[w]here two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances." *Corixa Corp. v. IDEC Pharmaceuticals Corp.*, 2002 WL 265094, *1 (D. Del. Feb. 25, 2002) (citing *Genetech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)); *Bayer Bioscience N.V. v.*

*Monsanto Co.*, 2003 WL 1565864, *1 (D. Del. Mar. 25, 2003) (same). In such situations, the court in which the second action is filed either dismisses or stays that action. *Ellenby Techs., Inc. v. AT Sys. Inc.*, No. Civ. A. 01-416, 2002 WL 356686 at *2 (D. Del. Feb. 8, 2002) (citation omitted). Alternatively, the court will transfer the second action to the court which is presiding over the first-filed action. *E.g.*, *Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc.*, 2001 WL 1414868, *2 (D. Del. Nov. 13, 2001).

At issue here are essentially mirror-image suits now pending in this Court and in the Eastern District of Texas. Both suits are based entirely on the '342 the '627 Patents. The sole difference between these suits is that the action filed in this Court includes certain Sony-affiliated entities.[2] However, the first-filed rule's controlling preference for the first-filed action is not lessened by the presence of additional parties in the second action. As this Court held in *Corixa*, where the second action includes an arguably necessary party not included in the first-filed action, that party can simply join (or be added to) the first-filed action. 2002 WL 265094 at *2; *see also Telephonics Corp. v. Lindly & Co.*, 192 F.Supp. 407 (E.D.N.Y. 1961).

In sum, it is beyond dispute that proceeding with both of these mirror-image patent suits would defeat the objectives of sound judicial administration and comity among equally ranking federal courts. *See Corixa, 2002 WL 265094 at *2.* Orion's first-filed action is entitled to priority and deference over this second-filed action

---

[2]    Orion does not concede that the plaintiffs other than Sony are proper parties to this dispute. It appears that they were added simply in an effort to make this case appear to be different than the first-filed Texas Action and based on alleged statements made by Orion at a settlement meeting requested by Sony at which none of the other Sony-affiliated entities were present or represented. *See* Complaint ¶ 22 and Capshaw ¶¶ 4-8.

and accordingly, this action should be dismissed, stayed or transferred to Texas.

*Genentech,* 998 F.2d at 937.

II.    IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF TEXAS.

Title 28 of the United States Code provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404 (a).

A.    This Action "Might Have Been Brought" In Texas.

Sony's claims in this case not only could have been brought in Texas, they should have been brought as compulsory counterclaims in the Texas Action. Sony filed its answer in the Texas Action on April 7, 2005 and asserted affirmative defenses of non-infringement and invalidity of the '342 and '627 Patents. To the extent that it believed that it had a right to a declaratory judgment on either of those issues, it could have and should have filed any such claims in the Texas Action.[3] As a result, Sony and the Sony-affiliated entities could have brought the claims asserted in this action in the Texas Action.

---

[3]    Although Orion does not concede that the Sony-affiliated entities are necessary parties to this dispute, they clearly could have joined in that counterclaim in the Texas Action.

> B.    A Balancing of The Relevant Factors Strongly
> Favors Transfer To the Eastern District of Texas.

The Third Circuit has identified several interests, both private and public, to assist district courts with determinations regarding transfer. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). This Court has found the private factors to include:

> (1) the convenience of the parties due to their relative physical and financial conditions, (2) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (3) the location of books and records, to the extent that these books and records could not be produced in a certain forum.[4]

*Corixa*, 2002 WL 265094 at *3.

> The public *Jumara* factors include:

> (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora.

*Jumara*, 55 F.3d at 879-80. The practice of this Court (and others) is to give weight only to those of the public factors that are relevant to the pending case. *E.g.*, *Dippold-Harmon*, 2001 WL 1414868 at *7; *Corixa*, 2002 WL 265094 at *4.

---

[4]    The other three private *Jumara* factors are: the plaintiff's selection of forum, the defendant's forum preference and whether the claim arose somewhere else. *Jumara*, 55 F.3d at 879. This Court has found these factors to be subsumed within others and, therefore, does not afford them any weight to avoid to risk of double-counting them and thereby throwing off the transfer analysis. *Corixa*, 2002 WL 265094 at *3 n. 4.

A balancing of the applicable private and public interests delineated in *Jumara*, in addition to the first-filed rule, strongly supports transfer of this case to the Eastern District of Texas.

1.      A Balancing of the Private "Convenience"
        Factors Strongly Supports Transfer.

Orion has offices in the Eastern District of Texas, all of its production documents relating to this litigation are in the Eastern District of Texas and at least some of the fact and expected expert witnesses reside in the Eastern District of Texas. By way of comparison, Orion has no offices in Delaware or contacts with Delaware other than the fact that it is a Delaware limited liability company. Similarly, Orion has no documents in Delaware and, to its knowledge, no relevant witnesses are located in Delaware.

The Sony plaintiffs in this action have offices in various states including California, New York and North Carolina. None of them have headquarters in Delaware. Moreover, from a practical standpoint, the witness and documents relevant to this case will already be in Texas for the first-filed Texas Action, and "bringing witnesses and relevant documents to only one location . . . minimizes the disruption caused to all parties by the litigation." *Corixa*, 2002 WL 265094 at *3.

In sum, because none of the witnesses or relevant documents are in Delaware, and because all such witnesses and documents will already be in Texas for litigation of the first-filed Texas Action, the balance of private factors favors transfer of this case to the Eastern District of Texas. *See, e.g., Invitrogen Corp. v. Stratagene Holding Corp.*, Civil Action No. 00-620-JJF, slip op. at 4 (D. Del. Apr. 11, 2001) ("[B]ecause the parties, witnesses and relevant documents and records are located outside of Delaware, the Court concludes that a balancing of the private factors weighs in favor

of transfer . . . ."); *Corixa*, 2002 WL 265094 at *3; *Dippold-Harmon*, 2001 WL 1414868 at *6-7.

2.     A Balancing of The Applicable Public<br>Factors Also Provides Support for Transfer.

Although Orion and the Sony-affiliated entities are incorporated or organized in Delaware, "that alone will not tip the 'balance of convenience'" in favor of keeping the second-filed action in Delaware. *E.g.*, *Corixa*, 2002 WL 265094 at *4.  In this case "Delaware does not have a strong interest in resolving this suit as none of the events giving rise to this action occurred here and none of the parties have their principal places of business in Delaware." *Invitrogen*, slip op. at 5.  Orion, on the other hand, does have offices in the Eastern District of Texas and other litigation relating to the '342 and '627 Patents, in addition to the Texas Action, is already pending in the Eastern District of Texas.  Thus, the relevant public *Jumara* factors clearly weigh in favor of transferring this action to Texas.

CONCLUSION

For the foregoing reasons, this Court should dismiss or stay this action in favor of the first-filed Texas Action or transfer this action to the Eastern District of Texas.

MORRIS, NICHOLS, ARSHT & TUNNELL

Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
Attorneys for Defendant
Orion IP, LLC

June 27, 2005

# EXHIBIT A

Not Reported in F.Supp.2d

2003 WL 1565864 (D.Del.)

**(Cite as: 2003 WL 1565864 (D.Del.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
BAYER BIOSCIENCE N.V., Plaintiff,
v.
MONSANTO COMPANY, Defendant.
**No. C.A. 03-023 GMS.**

March 25, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On January 10, 2003, the plaintiff, Bayer Bioscience, N.V. ("Bayer"), filed the above-captioned action alleging that Monsanto Company ("Monsanto") is engaging in activity that infringes Bayer's U.S. Patent No. 5,659,123 ("the '123 patent").

Presently before the court is Monsanto's motion to transfer the case to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). For the following reasons, the court will grant this motion.

II. BACKGROUND

Bayer is a foreign corporation headquartered in Ghent, Belgium. Monsanto is a Delaware corporation, with its headquarters in St. Louis, Missouri.

The patent at issue involves a corn product that has been genetically modified to express a particular "Bt" gene that makes the corn resistant to a type of Coleopteran insect known as the corn rootworm. For the past two years, Monsanto and Bayer have been engaged in litigation in the Eastern District of Missouri regarding four other patents assigned to Bayer. Those four patents all generally relate to crops genetically engineered with a "Bt gene," purportedly rendering the crops toxic to a class of insects known as Lepidopteran insects.

On December 27, 2002, the Missouri District Court issued a summary judgment order finding that all four of the patents-in-suit in that case were unenforceable due to inequitable conduct. On January 10, 2003, Bayer filed the present action. Also on January 10, 2003, Monsanto filed a declaratory judgment action for noninfringement in the Missouri District Court.

III. DISCUSSION

A. The "First-Filed" Rule

Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances. *See Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993). The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id.* at 937.

Applying the first-filed rule, Bayer now argues that it would be improper for the court to transfer this first-filed action to the Eastern District of Missouri. While the court does not dispute that this action is first-filed, albeit only by several hours, for the following reasons, the court concludes that the 1404(a) factors nevertheless weigh in favor of litigating this dispute in Missouri. *See id.* at 937-38 (noting that "the trial court's discretion tempers the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 1565864 (D.Del.)

**(Cite as: 2003 WL 1565864 (D.Del.))**

preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.").

B. Section 1404(a)

Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). Bayer suggests that the Eastern District of Missouri may not have personal jurisdiction over it. [FN1] Importantly, however, Bayer fails to suggest that it could not have originally brought this action in Missouri, rather than in Delaware. Thus, because Bayer could have brought this action in the proposed transferee district, the court will move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

> FN1. As it is not the court's province to determine the question of another court's personal jurisdiction, the court expresses no opinion on this issue.

***2** When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum. [FN2] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations

omitted).

> FN2. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

Upon consideration of these factors, the court finds that Monsanto has met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the defendant is a Delaware entity, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties; (2) no party maintains operations in Delaware; (3) the parties are large and international organizations with substantial assets; (4) because the parties are litigating apparently related issues in Missouri, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the "mirror image" action currently pending in the Eastern District of Missouri. Thus, given the on-going relationship that the Eastern District of Missouri has with the same parties, and the same, or related, patent or patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of transfer.

IV. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:
  1. Bayer's Motion for Leave to File a Sur-Reply (D.I.10) is GRANTED as unopposed.
  2. Monsanto's Motion to Transfer this case (D.I.5) is GRANTED.
  3. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Eastern District of Missouri.

2003 WL 1565864 (D.Del.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 1565864 (D.Del.)

**(Cite as: 2003 WL 1565864 (D.Del.))**


**Motions, Pleadings and Filings (Back to top)**

- 1:03CV00023  (Docket)

                  (Jan. 10, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Not Reported in F.Supp.2d

2002 WL 356686 (D.Del.)

**(Cite as: 2002 WL 356686 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
ELLENBY TECHNOLOGIES, INC., and
WILSON SAFE COMPANY Plaintiffs,
v.
AT SYSTEMS INC. and AT SYSTEMS
ATLANTIC, INC., Defendants.
**No. CIV.A. 01-416.**

Feb. 8, 2002.

MEMORANDUM ORDER

ROBINSON, District J.

I. INTRODUCTION

*1 On June 19, 2001, Plaintiffs Ellenby Technologies, Inc. ("Ellenby") and Wilson Safe Company ("Wilson") filed this declaratory judgment action against defendants AT Systems, Inc. ("ATS") and AT Systems Atlantic, Inc. ("ATS Atlantic") seeking a declaration that the patent in suit, U.S. Patent No. 6,067,530 ("the '530 patent"), [FN1] is unenforceable and that Ellenby has not infringed the patent. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a).

> FN1. The '530 patent is entitled "Cash Management System." This system tracks bills received by business establishments by cashier, amount and time. It also secures those bills immediately within a drop safe upon receipt from the customer in preparation for pick-up by a courier service. (D.I.17, Ex. A)

II. BACKGROUND

Prior to the filing of the Delaware declaratory action ("the Delaware action"), ATS [FN2] and ATS Atlantic sued Ellenby and Wilson for patent infringement of the '530 patent in the Central District of California ("the California action"). At the time the complaint was filed, ATS was not the owner of the '530 patent. The '530 patent was originally issued in the name of Brooks Armored Car Services, which changed its name to ATS Atlantic in February 2000. ATS Atlantic is a subsidiary corporation that is entirely owned and controlled by ATS. The '530 patent was ultimately assigned by ATS Atlantic to ATS on July 9, 2001. On August 9, 2001, ATS filed its first amended complaint wherein ATS Atlantic was named a plaintiff. In July 2001, Ellenby and Wilson moved to dismiss the California action and on July 16, 2001, ATS moved to dismiss the Delaware action.

> FN2. ATS filed suit on April 20, 2001.

On August 17, 2001, the California court issued an order denying Wilson's motion to dismiss for lack of personal jurisdiction, improper venue and forum non conveniens. *AT Systems, Inc. v. Ellenby Technologies, Inc. & Wilson Safe Co.,* Case No. 01-03653 (C .D. Cal.2001). The court did not grant Wilson's motion to dismiss for lack of jurisdiction, but afforded Wilson the opportunity to re-file its motion if it could demonstrate that it had not conducted any Internet transactions with California residents. The court granted Ellenby's motion and dismissed without prejudice Ellenby based on the finding that the court lacked personal jurisdiction.

On October 12, 2001, the court issued a second order [FN3] regarding Wilson's motion to dismiss for lack of personal jurisdiction and venue. *AT Systems, Inc. v. Wilson Safe Co.,* Case No. 01-03653 (C.D.Cal.2001). Essentially, the court found it could exercise specific personal jurisdiction over Wilson since Wilson purposefully availed itself of the protection of California's laws and that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2002 WL 356686 (D.Del.)

**(Cite as: 2002 WL 356686 (D.Del.))**

ATS had standing to bring the first action. The court further held the customer suit exception [FN4] applied to the facts presented at the time. The court found that Ellenby manufactured the Cashtrak [FN5] product and that Wilson Safe was a mere customer of Ellenby. Given ATS's assurances that it could demonstrate a different relationship between Wilson Safe and Ellenby, the court granted a 45-day expedited discovery period on that narrow issue. If discovery revealed a different relationship than that characterized in the court's earlier decision, then the customer suit exception would not apply and this action would proceed in California first, given the first-filed rule.

> FN3. The court also addressed Wilson's two new grounds for dismissal: lack of standing and defective service. The court found any problems with service were subsequently cured and any initial defects with standing were remedied through the filing of the Amended Complaint by ATS.

> FN4. The customer suit exception is a limited exception to the first-filed rule, whereby a second filed declaratory relief action filed by a manufacturer takes precedence over a first filed action brought by a patent owner against a mere customer.

> FN5. Ellenby is the manufacturer of Cashtrak which is alleged to infringe on the '530 patent.

III. DISCUSSION

**\*2** Currently before the court is ATS and ATS Atlantic's motion to dismiss. [FN6] (D.I.7) They contend that this declaratory judgment action was initiated to circumvent its choice of forum for the California action. (D.I.8) Moreover, under the first-filed rule, *Equal Employment Opportunity Commission v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988), where two federal courts have concurrent jurisdiction over sufficiently similar issues and parties, the action that was filed first normally proceeds and the court in which the second action resides either dismisses or stays that action.

> FN6. Alternatively, ATS and ATS Atlantic seek a stay of this action pending resolution of outstanding issues in the California action. (D.I.20) Although in its opposition to dismiss (D.I.10), Ellenby and Wilson request a stay of this action, their position has changed as they now request assignment and mediation with the magistrate judge, a request no longer possible to grant. (D.I.19)

In response, Ellenby and Wilson contend the first-filed rule does not apply when the court presiding over the first-filed action lacks personal jurisdiction. (D.I.10) They also assert Delaware is a more convenient venue for witnesses, parties and third party witnesses.

Although the court might disagree with the legal conclusions reached by its sister court in the Central District of California, *see, e.g., PE Corp. and Competitive Technologies v. Affymetrix, Inc.,* C.A. No. 00-629 (D.Del.2001), this court is not inclined to disturb the California district court's factual findings, particularly those relating to the parties' intentions. *AT Systems, Inc. v. Wilson Safe Company,* slip op. at 9-11. Accordingly, the first-filed rule applies and the instant litigation shall be dismissed.

IV. CONCLUSION

For the reasons stated, at Wilmington this 8th day of February, 2002;

IT IS ORDERED that defendants' motion to dismiss is granted. (D.I.7)

2002 WL 356686 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:01CV00416 (Docket)
                                (Jun. 19, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Not Reported in F.Supp.2d

2001 WL 1414868 (D.Del.)

**(Cite as: 2001 WL 1414868 (D.Del.))**

c

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
DIPPOLD-HARMON ENTERPRISES, INC.,
Plaintiff,
v.
LOWE'S COMPANIES, INC., Defendant.
**No. 01-532-GMS.**

Nov. 13, 2001.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

*1 On May 23, 2001, Lowe's Home Centers, Inc. ("Home Centers"), filed a complaint against the defendant Dippold-Harmon Enterprises, Inc. ("Dippld-Harmon") in the General Court of Justice, Superior Court Division, located in North Carolina. On July 27, 2001, Dippold-Harmon removed that action to the United States District Court for the Western District of North Carolina. On August 8, 2001, Dippold-Harmon filed the above-captioned action against Lowe's Companies, Inc. ("Lowe's"), the parent corporation of Home Centers, in Delaware.

Before the court is Lowe's' motion to dismiss, or alternatively, to transfer this case to the Western District of North Carolina, or to stay this case pending the outcome of that litigation. Lowe's argues that the court should dismiss this action because the court lacks personal jurisdiction over it. It further argues that, should the court not dismiss this action, the case should be transferred to North

Carolina pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a). For the reasons that follow, the court will deny Lowe's motion to dismiss for lack of personal jurisdiction, but will grant Lowe's motion to transfer.

II. BACKGROUND

Dippold-Harmon is a Delaware corporation, with its principle place of business in Delaware. Lowe's is a North Carolina corporation with its principal place of business in North Carolina. It is the world's second largest home improvement retailer, serving more than five million customers weekly. Lowe's maintains that it is not, and has never been, registered or qualified to do business in Delaware. It further asserts that it does not have a registered agent for the service of process in Delaware.

Home Centers is a wholly-owned subsidiary corporation of Lowe's. It is a North Carolina corporation registered to conduct business in Delaware, although its principle place of business is in North Carolina. Lowe's maintains significant control over its subsidiary. Lowe's sends its corporate representatives to its retail stores, including Home Centers, and then directs the stores to take certain actions in accordance with Lowe's policies. Other Lowe's high-level executives admit that they "supervise" and "oversee" the retail stores and travel to these stores on almost a daily basis. Furthermore, in Lowe's advertising materials, it proudly announces that *it* has more than six-hundred and fifty store in forty states, including four in Delaware. In actuality, the four stores in Delaware are its subsidiary Home Centers.

On April 3, 1998, Home Centers entered into a written contract with Dippold-Harmon. The contract specified that Dippold-Harmon would install granite countertops for Home Centers' customers. In approximately 1998, Lowe's also hired Dippold-Harmon as a vendor for the sale and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 1414868 (D.Del.)

**(Cite as: 2001 WL 1414868 (D.Del.))**

installation of granite kitchen countertops. At that time, Dippold-Harmon was one of several vendors that Lowe's utilized for the installation of these countertops. As Lowe's continued to open additional stores, it was faced with the costly proposition of installing countertop displays at each of these new stores. To ensure that the countertop displays were properly installed in a uniform manner, Lowe's representatives sought to hire a single vendor to install these displays. It also sought to hire a single vendor to install countertops for its individual customers.

*2 Dippold-Harmon maintains that the parties engaged in subsequent telephone negotiations aimed at making Dippold-Harmon the exclusive vendor for the installation of Lowe's countertop displays, as well as for countertops it sold to individual customers. Some of these discussions were initiated by Lowe's and were directed to Dippold-Harmon in Delaware. At a December 20, 1999 meeting with Dippold-Harmon, Lowe's executives Michael Gettler and Tammy Edson purportedly offered to make Dippold-Harmon its exclusive national vendor for the installation of granite countertops. Dippold-Harmon contends that, during the meeting, it accepted Lowe's' offer and entered into an oral "Exclusivity Agreement." The two companies also exchanged numerous letters and e-mails during this time concerning their vendor agreement.

On May 23, 2001, Home Centers filed the North Carolina complaint against Dippold-Harmon. In its complaint, Home Centers alleges that Dippold-Harmon breached their April 3, 1998 written contract. Specifically, Home Centers contended that Dippold-Harmon failed to comply with their written contract's standards in the installation of countertops in the homes of individual customers.

Dippold-Harmon filed this action against Lowe's on August 8, 2001, alleging that Lowe's breached their Exclusivity Agreement and acted fraudulently and with bad faith.

Because the court concludes that exercising

personal jurisdiction over Lowe's in this instance comports with traditional notions of fair play and substantial justice as required by the Due Process Clause, and that Lowe's falls within the reach of Delaware's long-arm statute, the court will deny Lowe's' motion to dismiss. *See International Shoe Co. v. Washington,* 326 U.S. 310 (1945); DEL. CODE. ANN. tit. 10 § 3104(c) (2001). However, because the "balance of convenience" tips in favor of Lowe's, the court will grant its motion to transfer.

III. DISCUSSION

A. Jurisdiction

The essence of Lowe's' argument is that, since it has not purposefully directed its activities to Delaware, the assertion of personal jurisdiction by the courts of this forum would violate the Due Process Clause. Lowe's further contends that its activities do not bring it within the reach of Delaware's long-arm statute. While Lowe's correctly frames the inquiry the court must make, the court disagrees with its analysis and reaches a different conclusion.

1. Due Process

The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe* 326 U.S. at 316 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). In other words, the defendant's contacts must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Finally, "even if the requisite minimum contacts

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 1414868 (D.Del.)

**(Cite as: 2001 WL 1414868 (D.Del.))**

have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568 (Fed.Cir.1994).

*3 Lowe's argues that its only contacts with Delaware are through Dippold-Harmon, which is a Delaware corporation. Specifically, Lowes' contends that its Home Centers contract with a Delaware corporation is, by itself, an insufficient basis to establish personal jurisdiction. The court agrees. *See Blue Ball Properties, Inc. v. McClain,* 658 F.Supp. 1310, 1316-17 (D.Del.1987). However, the court finds that Lowe's has many more purposeful contacts with Delaware than it discloses in its brief.

First, with regard to the Exclusivity Agreement in issue, Lowe's communicated regularly with Dippold-Harmon by sending numerous letters and e-mails from North Carolina to Delaware. It also placed telephone calls to Dippold-Harmon in Delaware. These contacts alone would be sufficient to satisfy the minimum contacts analysis. *See Hide Power and Equip. Co. v. Strates Enters., Inc.,* 1993 WL 258701, at *1 (Del.Super. June 15, 1993) (finding jurisdiction over a nonresident defendant based on a single visit to Delaware and two or three letters sent to Delaware.); *see also Mid-Atlantic Mach. & Fabric, Inc. v. Chesapeake Shipbuilding, Inc.,* 492 A.2d 250, 255 (Del.Super.1985) (extending jurisdiction over a nonresident defendant where the negotiation and execution of the contract occurred entirely outside of Delaware, and the defendant's contacts with Delaware were limited to "an unspecified number of trips.")

However, in addition to these direct contacts with Dippold-Harmon in Delaware, Lowe's is the world's second largest home improvement retailer. This fact alone would provide a sufficient basis for the court to seriously question the legitimacy of Lowe's' position. However, as previously noted, Lowe's has a wholly-owned subsidiary; that subsidiary, Home Centers, is registered to do business in Delaware,

and operates four stores in this jurisdiction. Neither in its advertising material, nor in its internal communications, does Lowe's distinguish between its corporate stores and Home Centers stores. In fact, Lowe's announces the opening of new Home Centers stores as new *Lowe's* locations. Lowe's also maintains strict controlover its Home Centers operations. It sends its representatives to the Home Centers stores and then directs those stores not in compliance with Lowe's policies to take certain actions to come into compliance. Such representatives have visited the Delaware stores. Lowe's also publically admits to otherwise "supervising and overseeing" its stores, and sending Lowe's personnel to those stores, including Delaware locations.

These facts support the conclusion that Lowe's should reasonably have anticipated being brought into court here. However, due process requires that the court make one more inquiry.

Notwithstanding the existence of Lowe's purposeful minimum contacts with this forum, the court must consider whether the "minimum requirements inherent in the concept of 'fair play and substantial justice...' defeat the reasonableness of [the assertion of] jurisdiction, even [if] the defendant has purposefully engaged in forum activities." *Asahi Metal Indust. Co. v. Superior Court,* 480 U.S. 102, 116 (1987). This question will only be answered affirmatively if the state's and the plaintiff's interest in having the dispute adjudicated in the forum are so minimal as to be outweighed by the burden imposed by subjecting the defendant to litigation within the forum. *See Beverly Hills Fan,* 21 F.3d at 1568.

*4 Here, the answer is plainly, no. Delaware has an interest in this action. Dippold-Harmon is a Delaware corporation. Clearly this forum's interests extend to corporate citizens that have sought the protection of Delaware's laws. Moreover, Delaware has an interest in addressing those purposeful activities conducted within its borders that result in allegations of injury. That interest extends to breaches of contract, such as that alleged here. Finally, Lowe's clearly has, through its Home

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 1414868 (D.Del.)

**(Cite as: 2001 WL 1414868 (D.Del.))**

Centers subsidiaries, significantly more than minimal contacts with this forum. Accordingly, the court concludes that the burden on Lowe's is not so onerous as to run afoul of traditional notions of fair play and substantial justice.

2. Delaware's Long-Arm Statute

The second step in the court's analysis into the propriety of subjecting Lowe's to personal jurisdiction in this forum is the determination of whether any of the provisions of Delaware's long-arm statute apply. *See* DEL. CODE. ANN. tit. 10 § 3104 (2001). While Lowe's contends that it does not fall within the grasp of any of Section 3104 's provisions, Dippold-Harmon contends that at least two of the provisions apply here. For purposes of this order, the court need only discuss one.

Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who causes injury either inside or outside of this State "by an act or omission outside of the State" if that individual "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State." DEL. CODE. ANN. tit. 10, § 3104(c) (2001). [FN1] The court will interpret this language broadly, as reaching the "maximum parameters of the due process clause." *See Jeffreys v. Exten,* 784 F.Supp. 146, 151 (D.Del.1992).

> FN1. This subsection provides general jurisdiction over the nonresident defendant. *See Mendelson v. Delaware River and Bay Auth.,* 56 F.Supp.2d 436, 439 (D.Del.1999). Accordingly, it is immaterial whether the jurisdictional contact is related to the claim. *See id.*

As discussed above, Lowe's directed telephone calls and numerous items of correspondence to Delaware in relation to the disputed Exclusivity Agreement. Through its wholly-owned subsidiary, Home Centers, Lowe's also operated, maintained, and directly supervised four stores in Delaware. Finally, Lowe's has not in any way publically

differentiated itself from the Home Centers locations in Delaware. Consequently, it cannot now complain that it should not be sued here.

Finding sufficient contacts to subject Lowe's to personal jurisdiction under both the State's long-arm statute and the Due Process Clause, the court will now move to a discussion of whether this action should be transferred to the Western District of North Carolina. [FN2]

> FN2. In its motion to dismiss, Lowe's also alleges that this action should be dismissed for lack of venue and insufficient service of process. However, both of these claims are based solely on its argument that the court lacked personal jurisdiction. As the court has found personal jurisdiction, these arguments too must fail.

B. Venue

As previously noted, Lowe's seeks to transfer this action pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a).

1. The "First-Filed" Rule

The "first-filed" rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. *See EEOC v. University of Pennsylvania,* 850 F.2d 969, 971-72 (3d Cir.1988). As its name implies, the rule generally provides that a later-filed action should be stayed pending the resolution of an earlier filed action, or transferred to the court in which the earlier-filed action is pending. *See Peregrine Corp. v. Peregrine Indus., Inc.,* 769 F.Supp. 169, 171 (E.D.Pa.1991).

*5 While Dippold-Harmon does not dispute that the North Carolina action was filed first, it argues that this rule should not apply to the present case because different parties and different issues are presented in the Delaware and North Carolina actions. The court finds this argument unpersuasive. First, Dippold-Harmon itself aggressively argued that Lowe's and Home Centers should be considered

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2001 WL 1414868 (D.Del.)

**(Cite as: 2001 WL 1414868 (D.Del.))**

one and the same party for purposes of establishing personal jurisdiction. The court will not now find that Lowe's and Home Centers are different parties for the purposes of the "first-filed" rule. For the reasons stated in Section A. 1, *supra,* the court is satisfied that Lowe's and Home Centers are effectively the same party.

Second, with regard to Dippold-Harmon's argument that different issues are presented in the Delaware and North Carolina actions, the court again disagrees. The North Carolina action concerns the breach of a written agreement between Home Centers and Dippold-Harmon. The written agreement provided that Dippold-Harmon would install granite countertops for its customers in a certain fashion. The Delaware action concerns the breach of an alleged oral agreement between Lowe's and Dippold-Harmon. This alleged oral agreement provided that Dippold-Harmon would be the exclusive distributor of those granite countertops. Both actions thus concern different facets of the same business relationship between the parties. Specifically, both actions relate to Dippold-Harmon's status as a fabricator and installer of granite countertops for Lowe's and Home Centers' customers. A decision by the North Carolina court on the validity, or breach, of the written agreement will bear directly on the alleged oral agreement concerning the same type of services. To have two separate trials on these issues would defeat the purposes of the "first-filed" rule, namely sound judicial administration and comity among federal courts of equal rank. *See EEOC,* 850 F.2d at 971. Accordingly, the court finds that the application of this rule weighs heavily in favor of transferring this case to North Carolina.

2. Section 1404(a)

Transfer to North Carolina is also mandated under a section 1404(a) analysis. Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). The parties agree that this action could have been filed in the Western District of North

Carolina as a diversity action. The court will, therefore, move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

In *Jumara,* the Third Circuit provided a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court should consider. *See id.*

a. The Private Interests

**\*6** The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent these files cannot be produced in the alternate forum. [FN3] *See id.*

> FN3. For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 197-201 (D.Del.1998). In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Western District of North Carolina is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See* 28 U.S.C. § 1404(a).

1. The Convenience of the Parties

Physically, North Carolina is moderately inconvenient for Dippold-Harmon, which is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 1414868 (D.Del.)

**(Cite as: 2001 WL 1414868 (D.Del.))**

headquartered in Delaware. Thus, in order to litigate this matter in North Carolina, it must travel several hours. However, modern communication and transportation capabilities make this moderate journey far less burdensome than it would have been at one time. *See Beverly Hills Fan,* 21 F.3d at 1569 (noting that it is not unduly burdensome for a defendant organized under the laws of the People's Republic of China to litigate in Virginia.). Because it is a national distributor of granite and stone kitchen fixtures, Dippold-Harmon is also financially capable of shouldering this burden. As such, it is doubtful that litigating in North Carolina would be an undue financial burden.

Furthermore, transfer to North Carolina would reduce the overall inconvenience to all parties involved. Dippold-Harmon must already travel to North Carolina to defend itself in the first-filed action pending in the Western District of North Carolina. Bringing witnesses and relevant documents to only one location, here North Carolina, minimizes the level of disruption caused to both parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time.

2. The Convenience of Witnesses

Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymeytrix,* 28 F.Supp.2d at 203. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any. *See id.* (internal citations omitted). Fact witnesses who posses first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of

convenience" analysis. *See id.*

Dippold-Harmon argues that Lowe's has failed to demonstrate that transfer to North Carolina would be more convenient for potential non-party fact witnesses. The court agrees, and notes that Lowe's' bare allegations of witness inconvenience, without more, are insufficient to tip the balance in its favor. However, all the material witnesses in this dispute, party or otherwise, will be in North Carolina already to litigate the first-filed action. Requiring that they then come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. Accordingly, the court finds that this factor also weighs in favor of transferring the action to North Carolina.

3. The Location of Records and Other Documents

*7 The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id.* at 205. Furthermore, the relevant documents will already be in North Carolina for the litigation of the first-filed action. The court thus sees no need to require that Lowe's, Home Centers, and Dippold-Harmon move the same documents from North Carolina to Delaware. Rather, it would be much more efficient to litigate these related actions in one location.

b. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The court thus elects to discuss only the three factors which the parties deem relevant to the pending case.

1. Practical Considerations Making Trial Easy, Expeditious, or Inexpensive

This factor appears to substantially repeat the "first-filed" analysis advanced by Lowe's, and accepted by the court, in Section 2 .B, *supra.* As such, the court declines to further address this issue here, since it has already taken this argument into consideration.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 1414868 (D.Del.)

**(Cite as: 2001 WL 1414868 (D.Del.))**

2. Delaware's Interest in Deciding This Action

Dippold-Harmon claims that Delware has a far stronger interest in resolving this action since Dippold-Harmon is a Delaware corporation. While the court is mindful of Delaware's interest, that alone will not tip the "balance of convenience" in its favor. This is so because the court can hardly describe the alleged Exclusivity Agreement as a local controversy unique to Delaware. *See Affymetrix,* 28 F.Supp.2d at 207. Instead, this alleged agreement concerns Dippold-Harmon's status as Lowe's' exclusive, national distributor. By its very nature then, the agreement is not local and unique to only Delaware, but rather, affects every state included in the alleged Exclusivity Agreement. Furthermore, the court notes that Dippold-Harmon appears to concede that the alleged Exclusivity Agreement was not formed in Delware and would not be governed by Delaware law. Accordingly, this factor does not weigh in favor of denying Lowe's motion to transfer.

3. Collective Travel Time and Cost

The final public interest factor identified by Lowe's concerns the time and cost allegedly associated with the potential witnesses' travel time to Delaware. This factor, however, duplicates other factors necessary to the court's transfer analysis, namely the private factors considering the convenience and availability of witnesses and the location of documents. The court has already rejected these arguments in its earlier discussion of the "private" factors in the "balance of convenience" analysis.

IV. CONCLUSION

For the foregoing reasons, the court concludes that Lowe's is subject to personal jurisdiction in Delaware, however, the "balance of convenience" tips strongly in favor of transferring this action to the Western District of North Carolina.

**\*8** For these reasons, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:
    1. Lowe's motion to dismiss for lack of personal jurisdiction (D .I. 8) is DENIED, and Lowe's

alternative motion to transfer this action to the Western District of North Carolina (D.I.8) is GRANTED; and
    2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Western District of North Carolina.

2001 WL 1414868 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:01CV00532 (Docket)

(Aug. 07, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED

INVITROGEN CORPORATION       :

    Plaintiff,             :

     v.                  :    Civil Action No. 00-620-JJF

                     :

STRATAGENE HOLDING         :
CORPORATION, et al.,        :

                     :

    Defendants.           :

APR 12  1.46 PM '01

CLERK
DISTRICT OF DELAWARE

## MEMORANDUM ORDER

Presently before the Court is Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I. 10).  For the reasons stated below, the Court will grant Defendants' motion.

### BACKGROUND

Plaintiff Invitrogen Corporation ("Invitrogen") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Rockville, Maryland.  (D.I. 1, ¶ 1).  Defendant Stratagene Holding Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in La Jolla, California.  (D.I. 1, ¶ 2).  Defendant Stratagene is a corporation organized and existing under the laws of the State of California, with its principal place of business located in La Jolla, California.  (D.I. 1, ¶ 3).  Defendant BioCrest Manufacturing, L.P. is a partnership organized and existing under the laws of the State of Delaware, with its principal place of business located in Cedar Creek,

Texas.   (D.I. 1, ¶ 4).

On June 29, 2000, Plaintiff filed suit against Defendants in the District of Delaware alleging patent infringement. Defendants move pursuant to 28 U.S.C. § 1404(a) to transfer the case to the District of Maryland (Southern Division).

## DISCUSSION

Under 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a). Because it is undisputed that Plaintiff could have brought the instant action in the District of Maryland, the Court's only task is to determine whether the factors enumerated in § 1404(a) warrant a transfer under the circumstances.

In determining whether or not to transfer venue under § 1404(a), a district court must consider a number of different factors.  These factors include several private interests: (1) the convenience of the parties due to their relative physical and financial conditions, (2) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (3) the location of books and records, to the extent that these books and records could not be produced in a certain forum.  Memminger v. InfoCure Corp., C.A. No. 00-707-JJF, slip op. at 4 (D. Del. Nov. 14, 2000)(citing Jumara v. State Farm Ins. Co., 55 F.3d 873,

879 (3d Cir. 1995)).[1] These factors also include several public interests:

> (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

Id. (citing Jumara, 55 F.3d at 879-80). When determining whether or not transfer is warranted under the circumstances, district courts must balance all of the relevant factors. Jumara, 55 F.3d at 883. The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See Continental Cas. Co. v. American Home Assurance Co., 61 F.Supp. 2d 128, 131 (D. Del. 1999). Below, the Court will analyze the factors relevant to the instant motion.

A.  **Private Factors**

The Court concludes that a balancing of the relevant private factors weighs in favor of transfer in this case. Here, the Court finds the convenience of the parties and the convenience of

---

[1] Jumara also listed the following private interests that district courts should consider: (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, and (3) whether the claim arose elsewhere. 55 F.3d at 879. Subsequent decisions of this Court, however, have determined that these interests are subsumed by the other Jumara factors. Memminger, slip op. at 5. Therefore, to avoid considering the same interests twice, the Court will not consider them separately. Id.

the witnesses to be the most pertinent of the private factors.

Although Invitrogen is organized as a corporation under Delaware law, Invitrogen maintains its principal place of business in the District of Maryland. Additionally, neither of the parties, their witnesses or any of the potentially relevant documents and records are located in Delaware.

Invitrogen contends that its choice of forum is paramount. At the outset, the Court notes that the Plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); see also Jumara, 55 F.3d at 879-80. In this case, however, Plaintiff's preference for Delaware is not given as much deference because most, if not all, of the events at issue occurred outside of Delaware. "[T]he transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred." Continental, 61 F.Supp. 2d at 131. Thus, because the parties, witnesses and relevant documents and records are located outside of Delaware, the Court concludes that a balancing of the private factors weighs in favor of transfer to the District of Maryland (Southern Division).

B. **Public Factors**

The Court concludes that a balancing of the relevant public factors also weighs in favor of transfer in this case. Here, the Court finds the practical considerations to be the most pertinent

of the public factors.

The Court concludes that transferring this case to the District of Maryland will promote judicial economy and make litigation less expensive and less burdensome for the parties and witnesses. In fact, Invitrogen has filed three prior lawsuits that are pending in the District of Maryland regarding closely-related patents and is currently involved in an action in that District regarding the same patent at issue in this case. Consequently, that Court has acquired considerable expertise in the complex subject matter of this action and will need to resolve the same or similar issues in these cases.

Further, the Court concludes that there is considerably more local interest in resolving this matter in Maryland, where Invitrogen operates its business. Conversely, the Court finds that Delaware does not have a strong interest in resolving this suit as none of the events giving rise to this action occurred here and none of the parties have their principal places of business in Delaware.

Thus, upon a balancing of the private and public factors, the Court concludes that this case should be transferred to the District of Maryland (Southern Division).

NOW THEREFORE, for the reasons discussed, IT IS HEREBY ORDERED this ⏐⏐ day of April 2001 that:

1.   Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a) (D.I. 10) is **GRANTED**.

2.   This matter shall be transferred to the District of Maryland (Southern Division).

UNITED STATES DISTRICT JUDGE

<u>CERTIFICATE OF SERVICE</u>

I, Donald E. Reid, hereby certify that on this 27th day of June, 2005, Orion IP, LLC's Opening Brief In Support Of Its Motion To Dismiss, Stay Or Transfer This Action To The Eastern District of Texas was served by electronic filing upon the following counsel of record:

> Josy W. Ingersoll, Esquire (#1088)
> Young, Conaway, Stargatt & Taylor LLP
> The Brandywine Building
> 1000 West Street, 17[th] Floor
> P.O. Box 391
> Wilmington, DE  19899-0391

Donald E. Reid (#1058)